**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| **NUTRACAP HOLDINGS, LLC,** | ) | **CASE NO. 25-50430-LRC** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **HM PEACHTREE CORNERS I LLC,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | **Contested Matter** |
| vs. | ) | |
| | ) | |
| **NUTRACAP HOLDINGS, LLC,** | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that HM PEACHTREE CORNERS I LLC ("Movant") has filed a Motion for Order Modifying the Automatic Stay to Permit Landlord to Recapture Certain Leased Premises or, in the Alternative, for Adequate Protection (the "Motion for Relief from Stay"), and related papers with the Court seeking an order granting Movant (i) relief from the automatic stay and permitting to recapture the leased premises located at 6550 Jimmy Carter Blvd., Norcross, Georgia, 30071 through any procedures authorized by the parties' Lease and state law (but not to enforce or execute upon any monetary judgment with respect to Debtor), (ii) waiving the stay provided in Rule 4001(a)(3), or (iii) ordering that Movant is entitled to adequate protection payments in the current amount of $141,349.20 per month, and as amended by the lease terms, for so long as the Debtor remains in possession and (iv) granting such other and further relief as the Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** The Court will hold a hearing on the Motion at *10:00 AM on May 14, 2025 in Courtroom 1204, U. S. Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303*, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

#232498v2

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below

If a hearing on the Motion for Relief from Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Respectfully submitted this 21st day of April, 2025.

**CAIOLA & ROSE, LLC**

*/s/ Elizabeth B. Rose*
Elizabeth B. Rose
Georgia Bar No. 558747
elizabeth@caiolarose.com
Kimberly B. Reeves
Georgia Bar No. 333419
kimberly@caiolarose.com

*Attorneys for HM PEACHTREE CORNERS I LLC*

125 Clairemont Ave., Suite 240
Decatur, Georgia 30030
(470) 300-1020 phone

#232498v2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| **NUTRACAP HOLDINGS, LLC,** | ) | **CASE NO. 25-50430-LRC** |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| **HM PEACHTREE CORNERS I LLC,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | **Contested Matter** |
| vs. | ) | |
| | ) | |
| **NUTRACAP HOLDINGS, LLC,** | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

**MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT LANDLORD TO RECAPTURE CERTAIN LEASED PREMISES OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

HM Peachtree Corners I LLC ("Movant" or "Landlord"), pursuant to 11 U.S.C. § 362(d) and Rule 4001 of the Bankruptcy Rules, hereby moves this Court to grant Movant stay relief and waiver of Rule 4001(a)(3) and to allow Movant to enforce its rights under the parties' commercial lease agreement, including recapture of Movant's real property (the "Motion"). In the alternative, Movant requests that the Court award Movant monthly adequate protection payments. In support of this Motion, Movant respectfully represents as follows:

**INTRODUCTION**

Movant owns commercial property located at 6550 Jimmy Carter Blvd., Norcross, Georgia 30071. On October 15, 2021, Movant and Nutracap Holdings, LLC ("Debtor") entered into a commercial lease for a total of 199,972 rentable square feet at 6550 Jimmy Carter Blvd., Norcross,

3

#232498v2

Georgia 30071 (the "Premises"). Debtor filed a Chapter 11 bankruptcy petition on January 14, 2025. Under its obligations provided by the Bankruptcy Code and the commercial lease contract between the parties, Debtor is required to pay base rent plus associated taxes and fees on the first of the month without demand.  Since the filing of the case, Debtor paid Movant such monies for the month of February but has not paid its obligations for the post-petition portion of January, March or April, which totals $364,772.13 in base rent and other financial obligations (and exclusive of late fees, interest and attorney fees).

Furthermore, the entirety of the Premises has been subleased by Debtor to two separate entities that are not connected to Debtor's business operations. As such, the Premises is not necessary for Debtor's effective reorganization. Notably, Debtor appears to be collecting rent from the subleases in amounts that exceed the amount Debtor owes to Movant under the Lease, yet Debtor is electing to not pay Movant the rent owed under the Lease. The fact that Debtor is receiving excess rent from its subtenants makes Debtor's failure to pay Monthly Rent to Movant particularly egregious.

 As set forth below, Movant is entitled to relief from stay because of lack of adequate protection as evidenced by Debtor's failure to timely and fully pay rent and other financial obligations.

Accordingly, this Motion seeks an immediate court order modifying the stay to permit Movant to retake possession of the premises pursuant to Movant's rights and remedies available under the parties' commercial lease agreement and law. In the alternative, Movant seeks adequate protection in the form of Monthly Rent in the amount owed under the lease.[1]

---

[1] Movant reserves the right to seek allowance of an administrative claim for all post-petition rent, as well as to seek any further relief.

#232498v2

## FACTUAL AND PROCEDURAL BACKGROUND

**A. The Lease**

1.  Movant is the owner of certain real commercial property and improvements located at 6550 Jimmy Carter Blvd., Norcross, Georgia 30071.

2.  Movant and Debtor entered into a certain commercial lease contract dated October 15, 2021 (the "Lease"), whereby Debtor leased the Premises from Movant. (A true and correct copy of the Lease is attached hereto as Exhibit A.)[2]

3.  The Lease requires Debtor to pay base rent and other financial obligations (collectively, "Monthly Rental"), on the first day of the month, in advance, during the Lease term. (*Id.* ¶¶ 3, 7, 12(A), 12(B), 12(E).)

4.  In total, as of the date of this Motion, Debtor owes Movant $449,875.01 in past due Monthly Rental.[3] (A true and correct copy of the Lease Ledger, a business record, is attached hereto as Exhibit B.)

5.  Post-petition, Debtor owes to Movant $364,772.13 in Monthly Rental for the Premises for a portion of January, March and April Monthly Rental.

6.  As demonstrated by the Lease Ledger, the current Monthly Rental totals $141,349.20 and base rent is $92,815.75.

7.  The Lease also requires Debtor to pay Movant late fees and interest on past-due amounts. (Lease, ¶ 4.)

8.  Additionally, the Lease obligates Debtor to pay Movant attorneys' fees incurred in connection with pursuing Movant's rights and remedies in the event of Debtor's default. (*Id.* ¶ 31.)

---

[2] Unless otherwise defined herein, capitalized words have the meaning set forth in the Lease.

#232498v2

9. The Lease provides that a "Default" occurs when Debtor fails to "pay when due, any installment of Base Rent, Additional Rent or any other amount or charge required to be paid by Tenant...and such failure is not cured within five (5) days…" (Exhibit A ¶ 21(A).)

10. Movant, through counsel, has notified Debtor's counsel that the rent has not been paid for January, March and April and more than five (5) business days have elapsed since that notice was provided. Accordingly, Debtor is in Default of the Lease.

11. The Lease further provides that a Default also occurs when Debtor "…shall commence a voluntary case…under any chapter of the Federal Bankruptcy Code (Title 11 of the United State Code)" (*Id.* ¶ 21(B).)

12. Upon an Event of Default, Movant's remedies include: 1) retaking possession of the Premises without terminating the Lease and/or 2) dispossessing the Debtor pursuant to O.C.G.A. § 44-7-50 et seq. (*Id.* ¶ 21(C).)

13. Movant's remedies are cumulative. (*Id.* ¶ 21(C).)

**B. The Keystone Tile Sublease**

13. The Lease allows Debtor to sublet the Premises upon consent of the Movant. (*Id.* ¶ 20(A).)

14. On or about June 22, 2023, Debtor and Keystone Tile, Inc. ("Keystone") entered into a sublease agreement for 80,432 rentable square feet of the Premises, designated as Suite C (the "Keystone Sublease"). (A copy of the Keystone Sublease provided by Debtor to Movant is attached hereto as Exhibit C.)

15. As required by the Lease, Movant consented to the Sublease with an effective date of June 22, 2023. (A true and correct copy of Landlord's Acknowledgement and Consent to Sublease is attached hereto as Exhibit D.)

#232498v2

16. Pursuant to the Keystone Sublease, Keystone currently pays monthly base rent of $58,205.96 to Debtor and is responsible for all other pass through expenses owed by Debtor under the Lease, as prorated based on the rentable square feet for the Keystone Sublease. (Keystone Sublease, ¶¶ 4.1, 4.2).

### C. The Lighthouse Cabinetry Sublease

17. The Lease allows Debtor to sublet the Premises upon consent of the Movant. (Lease, ¶ 20(A).)

18. On or about August 23, 2023, Debtor and Lighthouse Cabinetry, Inc. ("Lighthouse") entered into a sublease agreement for 119,540 rentable square feet of the Premises, designated as Suites A & B (the "Lighthouse Sublease"). (A true and correct copy of the Lighthouse Sublease is attached hereto as Exhibit E.)

19. As required by the Lease, Movant consented to the Lighthouse Sublease. (Lighthouse Sublease, Exhibit E.)

20. Pursuant to the Lighthouse Sublease, Lighthouse currently pays monthly base rent of $85,471.10 to Debtor and is responsible for all other pass through expenses owed by Debtor under the Lease, as prorated based on the rentable square feet for the Lighthouse Sublease. (*Id.* ¶¶ 4.1, 4.2.)

### D. Sublease Rent Exceeds Debtor's Rental Obligations to Movant Under the Lease

21. Pursuant to the Lease, Movant is entitled to 50% of any overage rent resulting from any sublease less any reasonable marketing expenses ("Overage Rent"). (Lease, ¶20.)

22. The total monthly base rent owed to Debtor pursuant to the Keystone Sublease ($58,205.96) and the Lighthouse Sublease ($85,471.10) (collectively, referred to hereinafter as the "Subleases") totals $143,677.06. (Keystone Lease, ¶ 4.1; Lighthouse Lease, ¶4.1.)

#232498v2

23. The monthly based rent owed by Debtor to Movant under the Lease is $92,815.75. (Lease, ¶ 3.)

24. Upon information and belied, Debtor is and has been receiving all amounts owed under the Subleases, including $58,205.96 more per month as compared to the amount owed by Debtor to Movant under the Lease.

25. Despite Debtor receiving this excess rental revenue, Debtor has still elected not to pay owing Monthly Rental under the Lease.

## RELIEF REQUESTED

26. This Motion seeks an immediate court order modifying the stay to permit Movant to enforce its rights under the Lease, including proceeding with a dispossessory proceeding or to otherwise retake Landlord's property in any manner permitted by law and/or the parties' Lease.

27. Alternatively, this Motion seeks adequate protection in the form of post-petition payments in the amount of 82,073.73 for pro-rated January post-petition Monthly Rental; $141,349.20 in Monthly Rental for each of the months of March and April; and Monthly Rental for subsequent months as set forth in the Lease.

## ARGUMENT AND AUTHORITY

**A. Stay Relief is Warranted to Allow Movant to Enforce its Rights and Remedies Based on the Pre-Petition Arrearage, Debtor's Failure to Pay Post-Petition Rent, and because the Premises is not necessary for an effective reorganization by the Debtor.**

28. Bankruptcy Code section 362(a) stays "the commencement or continuation … of a judicial, administrative, or other action or proceedings against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title", "any act to obtain possession of property of the estate", and "any act to collect, assess, or recover a

8

#232498v2

claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(1),(3),(6). "Because the automatic stay serves the interests of both debtors and creditors it may not be waived and its scope may not be limited by a debtor." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992).

29. Thus, to avoid a violation of the automatic stay, landlords must seek relief from the stay before repossessing any such leased premises. The Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … **for cause**, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1)(emphasis added).

30. The Bankruptcy Code does not, however, define "cause," and, as a result, the decision to lift the automatic stay is to be determined at the Court's discretion on a case-by-case basis as to what defines adequate protection. *Disciplinary Bd. v. Feingold* (*In re Feingold*), 730 F.3d 1268, 1277 (11th Cir. 2013).

31. Further, Section 362(d)(2) of the Bankruptcy Code provides that the Court shall grant relief from stay if both the debtor has no equity in the property and such property is not necessary to an effective reorganization..."The burden of proof on the question of a debtor's lack of equity in property lies with the movant." *In re Nittolo*, 11-14070-WHD, 2012 WL 1940577, at *2 (Bankr. N.D. Ga. Mar. 16, 2012) (citing 11 U.S.C. § 362(g)(1)).

32. The Debtor (or other party opposing the motion) has the burden "as to all other issues in connection with a motion for relief from the automatic stay." *Id.*

33. Debtor's failure to make its post-petition payments under the Lease is an event of default under the Lease, entitling Movant to recapture the Premises pursuant to the terms of the

9

#232498v2

Lease. Given Debtor's Default under the Lease, Debtor lacks equity in the leasehold interest otherwise granted by the Lease.

34. Additionally, Debtor cannot satisfy its burden of proof as to Section 362(d)(2)(B), that the Lease and Premises described therein are necessary for an effective reorganization.

35. In order for property to be necessary for an effective reorganization, "reorganization must be within reasonable prospect." *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, L.Ed.2d 740 (1988)). "This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id* (internal quotations in the original)(citations omitted).

36. A successful reorganization using these premises would require Debtors to assume the Lease, Section 365(b)(1) requires Debtor to: (1) cure, or provide adequate assurance that the Debtor will promptly cure any default, (2) compensate, or provide adequate assurance that the Debtor will promptly compensate, Movant for the actual pecuniary loss resulting from the default, and (3) to provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1)(A)-(C).

37. Debtor's post-petition failure to meet its ongoing obligations under the Lease, particularly when Debtor is generating a cash surplus from the Subleases, is evidence that Debtor cannot satisfy the Section 365 requirements.

38. Also, Debtor is not using the Premises for its own business operations. Rather, the Subleases are unrelated to Debtor's business operations for which it seeks to reorganize.

39. The "for cause" analysis should factor in the Debtor's post-petition defaults, particularly in light of the excess rent Debtor receives under the Subleases.

40. Based on the post-petition performance to date, there is no indication that Debtor will have the ability to promptly cure or the future ability to perform under the Lease so that a successful reorganization is in prospect, as required by Section 362(d)(2).

41. Here, Debtor is still in control of the Premises and availing itself of the leasehold interest via the Subleases. As such, as required by law and the Lease, Debtor must, at least, meet its post-petition obligations.

42. Debtor paid nearly all of its Monthly Rental for February, the month immediately following the bankruptcy petition filing.

43. However, Debtor has failed to pay Movant its Monthly Rental for the post-petition portion of January, March and April.

44. Furthermore, upon information and belief, Debtor is collecting Monthly Rental for the Premises under the Subleases, while at the same time neglecting its financial obligations to Movant.

45. As a result, Movant has been, and still is, enduring great hardship by Debtor's continuing to control the Premises pursuant to Debtor's rights under the Lease and Subleases without paying to Movant Monthly Rental, including Overage Rent, as required by the Lease.

46. Based on the foregoing, Movant's interest in the Premises is not adequately protected.

47. Accordingly, cause exists to grant Movant relief from the automatic stay to enforce its default remedies under the Lease, including initiating a dispossessory proceeding or otherwise recover the Premises.

48. For these reasons, Movant respectfully requests that any order granting stay relief be exempted from the fourteen (14) day stay of Federal Rule of Bankruptcy Procedure

#232498v2

4001(a)(1),(3).

49. Movant does not seek relief to enforce any monetary judgment with respect to Debtor, but only to enforce its rights under the Lease and recapture the Premises.

**B. In the Alternative, Movant is Entitled to Adequate Protection in the Form of Post-Petition Rent Payments.**

50. Section 365 provides: "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3). This code section is a "mandate" requiring the trustee "to perform all obligations" under the lease, including the payment of late fees, interest, and attorneys' fees as called for in the lease. *In re Beltway Med., Inc.*, 358 B.R. 448, 452 (Bankr. S.D. Fla. 2006) (collecting cases).

51. The purpose of Section 365(d)(3) is to require a trustee to pay all rent, at the rate in the lease contract, during the time period prior to rejection of the lease. *In re Pac.-Atl. Trading Co.*, 27 F.3d 401, 403–04 (9th Cir. 1994). Absent this provision, Congress recognized that a "landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position...." *Id.* (quoting 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch).

52. Other courts have noted that a landlord such as Movant should be entitled to proceed with its contractual and state law remedies where the estate does not pay rent as required under the Lease. *See In re Sturgis Iron & Metal Co., Inc.*, 420 B.R. 716, 724 (Bankr. W.D. Mich. 2009). Indeed, as Judge Learned Hand stated:

> [I]t would be a little hard to see by what power the court could keep a trustee in possession while he was determining his course, without compelling him meanwhile to fulfill the conditions imposed upon the term; for instance, the payment of any rent, secured by a right of reentry. While such ad interim payments need not, and of course would not, constitute an adoption of the term, insolvency

#232498v2

> ought not to give the lessee's creditors greater rights to possession than the lessee himself enjoyed; **and if the trustee were to hold the premises even temporarily, he should be allowed to do so only upon the same terms as the lessee.**

*Id.* (quoting *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir. 1939) (emphasis added)).

53. In addition to Section 365(d)(3), Section 503(b)(1)(A) allows as an administrative expense "the actual necessary costs and expenses of preserving the estate." As the *Sturgis* case noted, "given that the bankruptcy estate now includes leasehold interests from the outset of the case, it is difficult to imagine a more actual or necessary expense of preserving that estate than the payment of the very rent that nonbankruptcy law clearly recognizes as an absolute condition to the estate's continued possession of the property leased." *Id.* at 724-25. For this reason, "an estate cannot maintain property *cum onere*—i.e., property with a burden—without the estate also enduring the burden imposed." *Id.*

54. Furthermore, courts have recognized that the rental rate provided in the lease represents the proper measure of the "actual and necessary costs of preserving the estate." *E.g.*, *In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 65 (B.A.P. 10th Cir. 2002) (noting the difference between Sections 365 and 503 "is that lessors, as opposed to typical administrative expense claimants under § 503(b)(1), are not required to establish value or prove a benefit to the estate to establish the amount of their claim, but rather are entitled to current payment of the amounts required under their lease") (collecting cases).

55. Indeed, this Court has previously noted that "[c]ongress enacted § 365(d)(3) to require payment of post-petition rent and other obligations at the contract rate on a timely basis without regard to the 'actual, necessary' requirement of § 503(b)(1) and to relieve landlords from the burden of proving an administrative expense claim." *In re Manis Lumber Co.*, 430 B.R. 269, 277 (Bankr. N.D. Ga. 2009) (Bonapfel, J.).

56. Here, the Lease has not been rejected, and the Debtor is enjoying the benefit of the Premises and receiving monies in excess of its obligation to Movant under the Lease pursuant to the rental terms in the Subleases. Accordingly, in the event the Court is disinclined to grant Movant immediate relief from the stay, Movant seeks adequate protection payments in the amount of the Monthly Rental.

57. Movant further reserves the right to file an administrative claim for all post-petition, pre-rejection rent. *See In re PYXSYS Corp.*, 288 B.R. 309, 311 (Bankr. D. Mass. 2003) (finding commercial landlord was entitled to administrative priority claim at the contract rate for all rent that accrued during the pre-rejection period where the trustee failed to timely perform the debtor's obligation to pay rent).

58. Based on the foregoing, Movant respectfully requests that the Court grant stay relief to allow Movant to enforce its default rights under the Lease, including filing a dispossessory proceeding for the sole purpose of recapturing the Premises. In the alternative, Movant respectfully requests that the Court order adequate protection payments in the amount of the Monthly Rental and in accordance with the Lease terms until Movant is able to recapture the Premises. Movant reserves the right to request other and further relief, such as allowance of an administrative claim.

## **CONCLUSION**

WHEREFORE, based on the foregoing, Movant respectfully requests entry of an Order: (i) granting Movant relief from the automatic stay and permitting Movant to enforce its remedies under the Lease, including retaking possession of the Premises (but not to obtain or enforce any monetary judgment with respect to Debtor), or in the alternative, (ii) ordering that Movant is entitled to adequate protection payments in the amount of $364,772.13 in Monthly Rental for the

#232498v2

post-petition rent for January, March and April, and in Monthly Rental for subsequent months to be paid in accordance with the Lease terms, for so long as the estate remains in possession of the Premises, and (iii) granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 21st day of April, 2025.

        **CAIOLA & ROSE, LLC**

        */s/ Elizabeth B. Rose*
        Elizabeth B. Rose
        Georgia Bar No. 558747
        elizabeth@caiolarose.com
        Kimberly B. Reeves
        Georgia Bar No. 333419
        kimberly@caiolarose.com
        *Attorneys for HM PEACHTREE CORNERS I LLC*

        125 Clairemont Ave., Suite 240
        Decatur, Georgia 30030
        (470) 300-1020 phone

#232498v2

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025, I served a copy of the foregoing **MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT LANDLORD TO RECAPTURE CERTAIN LEASED PREMISES OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION** by electronically filing same, which sends a notice of the above-listed document and an accompanying link to the document to the parties listed below, who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program, and by providing copies by USPS, sufficient postage prepaid, to the parties listed on Master Service List attached hereto as Exhibit F.

                CAIOLA & ROSE, LLC

                */s/ Elizabeth B. Rose*
                Elizabeth B. Rose

#232498v2